**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**YASSER HASSAN,**

Plaintiff,

Case No.: 8:26-cv-002617

v.

**DILLARD'S, INC.,**

Defendant.
________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, YASSER HASSAN, complaining of the Defendant, DILLARD'S, INC., alleges and says:

## PARTIES

1. Plaintiff Yasser Hassan is a natural person over the age of eighteen who resides in Pasco County, Florida, and who at all times material was employed by Defendant in Hillsborough County, Florida.

2. Plaintiff is male, of Middle Eastern race and ancestry, and of Egyptian national origin.

3. Following his May 7, 2025 work injury, Plaintiff had a physical impairment that substantially limited one or more major life activities, had a record

of such an impairment, and/or was regarded by Defendant as having such an impairment.

4. Defendant Dillard's, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware, registered and authorized to transact business in the State of Florida, and at all times material transacted business in Hillsborough County, Florida, where it operates a retail department store designated Store 203 at Citrus Park Town Center, Tampa, Florida.

5. At all times material, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is an "employer" within the meaning of 42 U.S.C. § 2000e(b), 42 U.S.C. § 12111(5)(A), and section 760.02(7), Florida Statutes.

6. At all times material, Defendant was an "employer" within the meaning of section 440.02(16), Florida Statutes, and Plaintiff was Defendant's "employee" within the meaning of section 440.02(15), Florida Statutes.

7. At all times material, Plaintiff was qualified for and able to perform the essential functions of his position as a sales associate, with or without reasonable accommodation.

8. At all times material, Yolanda Cortez, Tony Cook, and Gregory Ostberg acted within the course and scope of their employment and as agents of

Defendant with actual and apparent authority over the terms and conditions of Plaintiff's employment, and Defendant is liable for their conduct.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

10. This Court has jurisdiction over actions brought under Title VII pursuant to 42 U.S.C. § 2000e-5(f)(3).

11. This Court has jurisdiction over actions brought under the ADA pursuant to 42 U.S.C. § 12117(a), which incorporates the powers, remedies, and procedures of Title VII.

12. This Court has supplemental jurisdiction over Plaintiff's claims arising under Chapter 760, Florida Statutes, and section 440.205, Florida Statutes, pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same employment relationship, the same course of conduct, and the same nucleus of operative fact as the federal claims and form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

14. Venue is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within this District, the employment records relevant to those practices are maintained and administered within this District, and Plaintiff would have continued to work within this District but for the unlawful conduct alleged.

15. Assignment to the Tampa Division is proper under Local Rule 1.04(a), Middle District of Florida, because the events giving rise to this action occurred in Hillsborough County, Florida, and Plaintiff resides in Pasco County, Florida, both of which lie within the Tampa Division.

## ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

16. In August 2025, and within three hundred days of the unlawful employment practices alleged herein, Plaintiff timely filed a Charge of Discrimination that was dual-filed with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations, assigned Charge No. 511-2025-04284.

17. The Charge alleged discrimination on the basis of race, sex, national origin, and disability and perceived disability, as well as hostile work environment and retaliation, under Title VII, the ADA, and the Florida Civil Rights Act of 1992. The claims asserted in this Complaint are like or reasonably related to, and grow out of, the allegations of that Charge.

18. On June 9, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue with respect to Charge No. 511-2025-04284.

19. This action is commenced within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

20. More than one hundred eighty days elapsed following the filing of the Charge without the Florida Commission on Human Relations having issued a determination. Accordingly, pursuant to section 760.11(8), Florida Statutes, Plaintiff may proceed as though the Commission had determined that reasonable cause exists, and brings this civil action pursuant to section 760.11(4)(a), Florida Statutes.

21. Plaintiff has not elected to pursue an administrative hearing under section 760.11(4)(b), Florida Statutes.

22. Plaintiff's claims under 42 U.S.C. § 1981 and section 440.205, Florida Statutes, are not subject to any administrative exhaustion requirement.

23. All conditions precedent to the institution of this action have been performed, have occurred, have been satisfied, have been excused, or have been waived.

24. Plaintiff has retained counsel and is obligated to pay a reasonable fee for their services.

## FACTUAL ALLEGATIONS

**Plaintiff's Hire and Performance**

25. In March 2023, Defendant hired Plaintiff as a sales associate in the Men's Department at Store 203, located at Citrus Park Town Center in Tampa, Hillsborough County, Florida.

26. From the outset of his employment, Plaintiff was among the top sales associates in the store, consistently ranking first or second in weekly sales.

27. Plaintiff's sex, Middle Eastern race and ancestry, and Egyptian national origin were known to Defendant and to its management personnel at Store 203 at all times material.

**Coworker Harassment Known to Management**

28. Within the first month of Plaintiff's employment, two coworkers cursed at Plaintiff using profanity.

29. One of those coworkers subsequently cursed Plaintiff's wife and son to his face, notwithstanding that the coworker had never met either of them.

30. Defendant's management was aware of this conduct but took no meaningful corrective or remedial action, and the conduct was neither investigated nor disciplined.

**Disparate Treatment in Scheduling and Time Off**

31. Plaintiff's direct manager, Yolanda Cortez, openly and consistently displayed favoritism toward female coworkers in the assignment of schedules, days off, and desirable shifts.

32. Approximately four months into his employment, Plaintiff learned that he was entitled to one Sunday off per month and to two early-out, non-closing shifts.

33. Plaintiff never received a single Sunday off during his employment and was almost always scheduled to close on every day he worked.

34. By contrast, Plaintiff's female coworkers, who were similarly situated in all relevant respects, regularly received the days off they requested.

35. In August 2024, Plaintiff requested one week off, five weeks in advance, in order to spend time with his family before his son returned to college.

36. Defendant denied that request one week before the scheduled time off, purportedly because of "insufficient staffing."

37. Plaintiff subsequently learned that Ms. Cortez denied his request because she had taken that same week off herself, and that two female coworkers were also off during that same week notwithstanding Plaintiff's earlier-submitted request.

38. The stated justification of "insufficient staffing" was false, and Defendant's scheduling decisions were made on the basis of sex.

**Disparate Assignment of Menial, Non-Sales Physical Labor**

39. Ms. Cortez consistently required Plaintiff to perform extra tasks outside the scope of his sales position that other associates were not asked to perform, including moving furniture, dusting, cleaning glass, scrubbing walls that had not been cleaned for years, and cleaning floors.

40. None of Plaintiff's coworkers was asked to perform this type of physical labor.

41. After Plaintiff thoroughly cleaned and organized his own assigned area, Ms. Cortez ordered him to clean and organize his female coworkers' areas as well.

42. Plaintiff's female coworkers were never directed to assist Plaintiff in return.

43. These assignments removed Plaintiff from the sales floor and reduced his available selling time, adversely affecting his recorded sales performance.

**Diversion of Plaintiff's Sales, Customers, and Appointments**

44. Ms. Cortez diverted sales and customers that should have been credited or assigned to Plaintiff, and rang Plaintiff's sales under her own name.

45. A coworker identified as Emma, from the Shoe Department, observed this practice on multiple occasions and confronted Plaintiff about it, stating: "That's not fair. None of the other managers do that to anybody else."

46. Customer appointments that should have been routed to Plaintiff were instead retained by Ms. Cortez.

47. Ms. Cortez also assigned many of Plaintiff's sales to female coworkers, including sales originating from Plaintiff's own customers.

48. Ms. Cortez was the only sales manager at Store 203 who rang sales under her own name.

49. This conduct artificially depressed Plaintiff's recorded sales figures — the very metric Defendant would later invoke as the stated basis for his termination.

**Intrusive Off-Hours Contact and Social Exclusion**

50. Ms. Cortez repeatedly texted Plaintiff's personal cellular telephone as many as fifteen times per day, beginning as early as 8:00 a.m. and continuing as late as 9:30 p.m.

51. These communications were work-related directives, not personal conversation.

52. No other coworker, male or female, was subjected to this intrusive and harassing conduct.

53. Ms. Cortez never greeted Plaintiff in the morning, never asked how he was doing, and never engaged him in casual conversation, while doing so daily with female coworkers and with Store Manager Tony Cook.

54. Ms. Cortez spoke to Plaintiff only when she wished to issue orders to him.

**Plaintiff's August 2024 Protected Complaint and the First Retaliatory Write-Up**

55. On August 18, 2024, Ms. Cortez questioned a coworker identified as Matthew about Plaintiff's activities rather than addressing Plaintiff directly.

56. When Plaintiff expressed his desire that Store Manager Tony Cook be present for any meeting concerning him, Ms. Cortez attempted to write Plaintiff up for insubordination.

57. On August 20, 2024, Plaintiff emailed Mr. Cook objecting to the write-up and reporting unfair treatment, off-hours texting, favoritism toward female coworkers, and micromanagement.

58. Plaintiff's August 20, 2024 email constituted protected activity because Plaintiff opposed practices he reasonably and in good faith believed to be unlawful discrimination.

59. After reading Plaintiff's email, Mr. Cook removed the write-up from Plaintiff's personnel file and shredded it in front of him — an acknowledgment by Defendant that the discipline was unwarranted.

**May 2025: Renewed Protected Complaints and Escalating Retaliation**

60. On May 1, 2025, Defendant received a coworker complaint alleging that Plaintiff had yelled at a coworker identified as Clara. Plaintiff denies that he did so.

61. On May 2, 2025, Defendant issued Plaintiff a written warning based on that allegation.

62. That same day, Plaintiff telephoned Defendant's corporate office to report discrimination and was directed to District Manager Gregory Ostberg, who advised Plaintiff to email Store Manager Tony Cook.

63. On May 3, 2025, Plaintiff emailed Mr. Cook disputing the write-up and renewing his complaints of favoritism and a hostile work environment, expressly referencing and incorporating his August 20, 2024 email.

64. Plaintiff's May 2 and May 3, 2025 complaints constituted protected activity.

65. Mr. Cook was visibly upset that Plaintiff had contacted the corporate office and Mr. Ostberg. Mr. Cook told Plaintiff that he should not have gone over his head, and warned Plaintiff to "watch his back."

66. On May 5, 2025, Mr. Cook summoned Plaintiff to a meeting attended by the assistant store manager and the men's department manager, at which Mr. Cook informed Plaintiff that the write-up had been removed from his file and shredded it in front of him — again acknowledging that the discipline was unwarranted.

67. During that same meeting, the assistant store manager told Plaintiff that he was making her "uncomfortable" and giving her "goose bumps." Plaintiff immediately recognized the gravity of that accusation, which was untethered to any conduct on his part and which invoked a stereotype associated with Plaintiff's sex, race, and national origin.

68. At 11:12 a.m. on May 5, 2025, Plaintiff forwarded his written account of that meeting to District Manager Ostberg. This too constituted protected activity.

**The May 5, 2025 "Expectations" Document and Its Unattainable Quotas**

69. Also on May 5, 2025 — two days after Plaintiff's written complaint to Mr. Cook and three days after his complaint to Defendant's corporate office — Defendant presented Plaintiff with a written "expectations" document.

70. The document required Plaintiff to sell three Alton Lane suits per week and to achieve at least fifty percent of his total sales from Department 53X, and threatened "further action" for any failure to do so.

71. Plaintiff refused to sign the document, stating that the goals were unrealistic. Mr. Cook told Plaintiff that he had to sign it in order to keep his job.

72. The quotas were objectively unattainable. Alton Lane suits are manufactured overseas and require two to five weeks to arrive; they carry an average cost of $800 to $900; and customers were required to select from a limited three-by-three fabric sample.

73. Plaintiff's assigned department had minimal customer foot traffic, making the volume required by the quota unachievable in the ordinary course.

74. The requirement that at least fifty percent of Plaintiff's total sales originate from Department 53X directly contradicted Defendant's own "Five-Star" policy, which permits sales associates to sell anywhere in the store.

75. Plaintiff is aware of no employee at Store 203 who had ever been subjected to comparable quotas, and of no employee at Store 203 who had ever achieved them.

76. No similarly situated employee outside Plaintiff's protected classes, and no similarly situated employee who had not engaged in protected activity, was subjected to comparable quotas.

77. The "expectations" document was not a good-faith performance-management measure. It was a pretextual device manufactured in immediate response to Plaintiff's protected complaints in order to create a documentary predicate for his termination.

**Plaintiff's Contemporaneous Sales Success**

78. In early May 2025, a new manager identified as Kay confirmed to Plaintiff that he was approximately $20,000 ahead of the prior year's sales in his department.

79. At 9:18 a.m. on May 7, 2025, Plaintiff replied to District Manager Ostberg, stating that Mr. Ostberg's response had not addressed his complaints of

being bullied, intimidated, retaliated against, and discriminated against, and expressly requesting an investigation.

80. Plaintiff's May 7, 2025 email constituted protected activity. Defendant conducted no investigation in response to it.

**The May 7, 2025 Work Injury, Restrictions, and Workers' Compensation Claim**

81. On May 7, 2025, Plaintiff suffered a work-related back injury on the job.

82. Plaintiff initiated a claim for workers' compensation benefits before the Office of the Judges of Compensation Claims, Tampa District, assigned OJCC Case No. 26-001335JPM, with a date of accident of May 7, 2025.

83. Plaintiff's entitlement to compensation for the physical injury itself has been resolved through that workers' compensation proceeding. Plaintiff seeks no recovery in this action for the physical injury he sustained on May 7, 2025. The injury is material here only because Defendant's knowledge of it, of the resulting restrictions, and of Plaintiff's claim for benefits supplies the disability and retaliation elements of the claims pleaded below.

84. Plaintiff's injury required ongoing medical treatment. He was out of work from May 8 through May 10, 2025, missed additional days later in May 2025, and was placed under physician-imposed work restrictions.

85. Defendant had actual knowledge of Plaintiff's injury, of his workers' compensation claim, and of his physician-imposed work restrictions.

86. Plaintiff's back injury constituted a physical impairment that substantially limited one or more major life activities, including lifting, bending, standing, walking, and working.

87. In the alternative, Plaintiff had a record of such an impairment, and/or Defendant regarded Plaintiff as having such an impairment because Defendant subjected Plaintiff to an adverse employment action because of an actual or perceived physical impairment.

88. Plaintiff's impairment was neither transitory nor minor.

89. At all material times Plaintiff was a qualified individual: he could perform the essential functions of his sales associate position with or without reasonable accommodation.

90. Defendant never engaged Plaintiff in any interactive process concerning his restrictions, never offered or discussed any accommodation, never inquired what accommodation he might require, and never assessed whether any accommodation would impose an undue hardship.

91. Notwithstanding his injury, his restrictions, and his missed days, Plaintiff sold approximately $19,000 in May 2025 — a figure Defendant itself acknowledged.

**Plaintiff's Termination on May 27, 2025**

92. On May 27, 2025, Defendant terminated Plaintiff's employment. The stated reason was failure to meet sales goals.

93. Plaintiff's termination occurred twenty days after his on-the-job injury and the initiation of his workers' compensation claim; twenty days after his May 7, 2025 email demanding an investigation; twenty-two days after the imposition of the "expectations" document; and twenty-four days after his May 3, 2025 written complaint of discrimination.

94. Plaintiff remained under physician-imposed work restrictions at the time of his termination.

95. Defendant did not terminate any similarly situated employee outside Plaintiff's protected classes for comparable or worse sales performance, and did not terminate any similarly situated employee who had not engaged in protected activity or filed a workers' compensation claim.

**Pretext**

96. Defendant's stated reason for Plaintiff's termination — failure to meet sales goals — is false and pretextual.

97. Plaintiff was, on Defendant's own records, a top performer who ranked first or second in weekly sales throughout his employment.

98. Plaintiff sold approximately $19,000 in May 2025 notwithstanding a work injury, physician-imposed restrictions, and multiple missed days of work.

99. Plaintiff was approximately $20,000 ahead of the prior year's departmental sales, as Defendant's own manager confirmed weeks before the termination.

100. The quotas Defendant invoked to justify the termination did not exist until twenty-two days before the termination, were imposed on Plaintiff alone, were objectively unattainable, and conflicted with Defendant's own "Five-Star" sell-anywhere policy.

101. Ms. Cortez's practice of ringing Plaintiff's sales under her own name and diverting his customers and appointments to female coworkers artificially depressed the very sales figures Defendant relied upon, rendering the stated reason self-manufactured.

102. Mr. Cook expressly warned Plaintiff to "watch his back" after Plaintiff complained to Defendant's corporate office — a direct expression of retaliatory animus, followed within twenty-five days by Plaintiff's termination.

103. Twice Defendant issued discipline to Plaintiff and twice, upon receiving Plaintiff's written objection, Defendant withdrew and destroyed it — demonstrating that the disciplinary record Defendant constructed against Plaintiff was baseless.

104. Defendant conducted no investigation into any of Plaintiff's complaints of discrimination, harassment, or retaliation, notwithstanding his express written request that it do so.

105. The close temporal proximity between Plaintiff's protected activity — including his May 2, May 3, May 5, and May 7, 2025 complaints and his May 7, 2025 workers' compensation claim — and his May 27, 2025 termination, considered together with the foregoing, establishes that Defendant's stated reason is a pretext for discrimination and retaliation.

**Preservation of Plaintiff's Employment Claims**

106. On May 4, 2026, the parties to the workers' compensation proceeding entered into a Mediation Settlement Agreement, and payment of medical and indemnity benefits ceased on that date.

107. On July 22, 2026, Plaintiff executed a General Release of All Claims and a Separation Agreement and Release in connection with the resolution of that workers' compensation claim.

108. Those instruments resolved only Plaintiff's entitlement to workers' compensation benefits under Chapter 440, Florida Statutes. Both expressly and unambiguously preserve the claims asserted in this action.

109. The General Release provides: "Notwithstanding any other language in this Agreement or any related settlement document, this settlement releases only Employee's claims for workers' compensation benefits under Chapter 440, Florida Statutes, arising from any and all workplace injury(ies), together with any employer-liability Coverage B claims relating to that physical workplace injury."

110. The General Release further provides: "Nothing in this Agreement releases, waives, settles, limits, compromises, or otherwise affects any separate claim arising from the termination of Employee's employment or from any alleged violation of Florida or federal employment law. Employee expressly preserves all such claims, together with all relief that may be available in connection with them, including equitable relief, back pay, front pay, lost wages, lost employment benefits, compensatory damages, attorneys' fees, costs, and any other relief legally available in the separate employment litigation."

111. The General Release further provides that neither the Separation Agreement nor the General Release releases, waives, settles or otherwise affects Plaintiff's separate employment-law claim arising from the termination of his employment, and that no portion of the workers' compensation settlement payment constitutes consideration for the release of those separate employment claims.

112. The Separation Agreement and Release contains materially identical preservation language. It further provides that the parties' acknowledgment that the employment relationship ended does not constitute an admission or agreement that the discontinuation of employment was lawful, voluntary, consensual, justified, or supported by legitimate grounds, and it does not constitute a voluntary resignation by Plaintiff.

113. Both instruments further provide that they do not constitute an admission that Plaintiff failed to mitigate damages, was unable to work, rejected an offer of reinstatement or other employment, voluntarily withdrew from the labor market, or waived any claim for back pay, front pay, lost wages, lost benefits, or other relief.

114. Plaintiff's election of workers' compensation as the exclusive remedy for the physical injury he sustained on May 7, 2025 is, by its express terms, limited to claims and remedies arising from that physical injury. It does not constitute an

election of remedies as to, a release of, or a waiver of any claim asserted in this action.

**Damages**

115. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, and lost earning capacity from May 27, 2025 forward.

116. In calendar year 2024, Plaintiff's last full calendar year of employment, Defendant reported wages paid to Plaintiff of $35,162.82.

117. As a further direct and proximate result, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish, loss of dignity, inconvenience, loss of enjoyment of life, injury to his professional reputation, and impairment of his future career prospects.

118. Plaintiff has incurred out-of-pocket expenses, including costs associated with seeking replacement employment, and has made and continues to make reasonable efforts to mitigate his damages.

119. Defendant's conduct was intentional, willful, and undertaken with malice or with reckless indifference to Plaintiff's federally and state-protected rights.

**COUNT I**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

120. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

121. Plaintiff is of Middle Eastern race and is a member of a protected class under Title VII.

122. Plaintiff was qualified for his position and performed it at a level that met and exceeded Defendant's legitimate expectations.

123. Defendant subjected Plaintiff to adverse employment actions, including disparate scheduling, the assignment of menial non-sales labor not assigned to comparators, the diversion of his sales and customers, unwarranted discipline, the imposition of unattainable quotas, and termination.

124. Similarly situated employees outside Plaintiff's protected class were treated more favorably in each of these respects.

125. Plaintiff's race was a motivating factor in the adverse employment actions described herein.

**COUNT II**
**NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII**

126. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

127. Plaintiff's national origin is Egyptian, and he is a member of a protected class under Title VII.

128. Plaintiff was qualified for his position and performed it at a level that met and exceeded Defendant's legitimate expectations.

129. Defendant subjected Plaintiff to the adverse employment actions described above, including his termination on May 27, 2025.

130. Similarly situated employees outside Plaintiff's protected class were treated more favorably.

131. Plaintiff's national origin was a motivating factor in the adverse employment actions described herein.

## COUNT III
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

132. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

133. Plaintiff is male and is a member of a protected class under Title VII.

134. Defendant, through Ms. Cortez, systematically favored female employees over Plaintiff in scheduling, the granting of requested time off, the assignment of non-sales physical labor, the allocation of sales credit, customers,

and appointments, the imposition of discipline, and the intrusiveness of supervision.

135. Plaintiff's female comparators were similarly situated to Plaintiff in all relevant respects and were treated more favorably in each of these respects.

136. Plaintiff's sex was a motivating factor in the adverse employment actions described herein, including his termination.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

137. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

138. Plaintiff was subjected to unwelcome harassment throughout his employment, including profane verbal abuse directed at him and at his wife and son; the repeated public assignment of demeaning physical labor assigned to no one else; the appropriation of his sales by his own manager; incessant off-hours contact of a kind directed at no other employee; deliberate social exclusion; and the accusation by Defendant's assistant store manager that his mere presence made her "uncomfortable" and gave her "goose bumps."

139. The harassment was based on Plaintiff's race, national origin, and sex.

140. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment. It persisted over more than two years, occurred as frequently as fifteen times per day, was humiliating, and unreasonably interfered with Plaintiff's work performance.

141. Plaintiff subjectively perceived the environment to be abusive, and a reasonable person in Plaintiff's position would have perceived it to be abusive.

142. The harassment was perpetrated principally by Plaintiff's direct supervisor, Ms. Cortez, who had authority over the terms and conditions of his employment and who culminated the harassment in a tangible employment action. To the extent the harassment was perpetrated by coworkers, Defendant knew or should have known of it through Plaintiff's August 20, 2024 and May 2025 complaints and failed to take prompt and appropriate corrective action.

**COUNT V**
**RETALIATION IN VIOLATION OF TITLE VII**

143. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

144. Plaintiff engaged in statutorily protected activity on multiple occasions, including his August 20, 2024 email to Mr. Cook; his May 2, 2025 telephone complaint of discrimination to Defendant's corporate office; his May 3,

2025 written complaint to Mr. Cook; his May 5, 2025 written report to Mr. Ostberg; and his May 7, 2025 written demand for an investigation into being bullied, intimidated, retaliated against, and discriminated against.

145. In each instance Plaintiff opposed practices he reasonably and in good faith believed to constitute unlawful discrimination under Title VII.

146. Defendant thereafter subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including the August 2024 attempted write-up for insubordination, the May 2, 2025 write-up, Mr. Cook's warning to "watch his back," the May 5, 2025 imposition of unattainable quotas under threat of "further action" and on pain of discharge, and Plaintiff's termination on May 27, 2025.

147. A causal connection exists between Plaintiff's protected activity and the materially adverse actions. Defendant imposed the quotas two days after Plaintiff's May 3, 2025 written complaint and terminated him twenty days after his May 7, 2025 demand for an investigation.

**COUNT VI**
**RACE AND ANCESTRY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

148. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

149. Plaintiff is of Middle Eastern race and ancestry and is a member of a class protected by 42 U.S.C. § 1981.

150. Plaintiff and Defendant had a contractual employment relationship, which encompasses the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

151. Defendant intentionally discriminated against Plaintiff in the terms, conditions, privileges, and termination of that relationship on account of his race and ancestry.

**COUNT VII**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**

152. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

153. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained, in August 2024 and in May 2025, of discriminatory treatment that he reasonably and in good faith believed to be based in part on his race and ancestry.

154. Defendant thereafter subjected Plaintiff to materially adverse actions, including unwarranted discipline, the imposition of unattainable quotas on pain of discharge, and termination.

**COUNT VIII**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

155. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

156. Following his May 7, 2025 work injury, Plaintiff had a physical impairment that substantially limited one or more major life activities, had a record of such an impairment, and/or was regarded by Defendant as having such an impairment.

157. Plaintiff was a qualified individual who could perform the essential functions of his position with or without reasonable accommodation.

158. Defendant had actual knowledge of Plaintiff's impairment, his medical treatment, and his physician-imposed work restrictions.

159. Defendant terminated Plaintiff on May 27, 2025, twenty days after the onset of his impairment and while he remained under physician-imposed restrictions.

**COUNT IX**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

160. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

161. Plaintiff was an individual with a disability and a record of a disability, and was a qualified individual.

162. Defendant had actual notice of Plaintiff's need for accommodation. Plaintiff's physician imposed work restrictions, Plaintiff's absences from work on May 8 through May 10, 2025 and thereafter were medically necessitated, and Plaintiff's workers' compensation claim placed Defendant on notice of a work-related physical impairment requiring ongoing treatment.

163. Reasonable accommodations were available that would not have imposed an undue hardship on Defendant, including observance of Plaintiff's lifting and physical restrictions, relief from the non-sales physical labor Defendant had assigned him, a modified schedule, and leave for medical treatment.

164. Defendant failed to engage in any interactive process concerning Plaintiff's restrictions, failed to inquire as to Plaintiff's restrictions or needs, failed to offer or provide any accommodation, and instead terminated Plaintiff while he remained under restriction.

## COUNT X
## RETALIATION IN VIOLATION OF THE ADA

165. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

166. Plaintiff engaged in activity protected by the ADA when he reported a work-related injury, sought and obtained medical treatment and work restrictions, took medically necessitated leave, and thereby placed Defendant on notice of a disability and an implicit request for accommodation of his restrictions.

167. Defendant thereafter subjected Plaintiff to a materially adverse action by terminating his employment on May 27, 2025.

## COUNT XI
## RACE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

168. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

169. Defendant discriminated against Plaintiff on the basis of his Middle Eastern race in the terms, conditions, and privileges of his employment and in his termination. § 760.10, Fla. Stat.

170. Similarly situated employees outside Plaintiff's protected class were treated more favorably.

## COUNT XII
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

171. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

172. Defendant discriminated against Plaintiff on the basis of his Egyptian national origin in the terms, conditions, and privileges of his employment and in his termination. § 760.10, Fla. Stat.

173. Similarly situated employees outside Plaintiff's protected class were treated more favorably.

**COUNT XIII**
**SEX DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**

174. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

175. Defendant discriminated against Plaintiff on the basis of his sex in scheduling, the granting of requested time off, the assignment of non-sales physical labor, the allocation of sales credit, customers, and appointments, the imposition of discipline, the intrusiveness of supervision, and his termination. § 760.10, Fla. Stat.

176. Plaintiff's female comparators were similarly situated in all relevant respects and were treated more favorably.

**COUNT XIV**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**

177. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

178. Plaintiff was subjected to unwelcome harassment based on his race, national origin, and sex.

179. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment, and Plaintiff both subjectively perceived and reasonably could perceive the environment as abusive.

180. The harassment was perpetrated by Plaintiff's supervisor and culminated in a tangible employment action, and Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

## COUNT XV
## HANDICAP DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

181. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

182. Following his May 7, 2025 work injury, Plaintiff was a person with a handicap, had a record of a handicap, and/or was perceived by Defendant as having a handicap. § 760.10, Fla. Stat.

183. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

184. Defendant terminated Plaintiff on May 27, 2025 because of his handicap or perceived handicap and the associated work restrictions, and failed to provide or even discuss any reasonable accommodation.

## COUNT XVI
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

185. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

186. Plaintiff engaged in protected activity by opposing practices he reasonably and in good faith believed to be unlawful under the Florida Civil Rights Act of 1992. § 760.10, Fla. Stat.

187. Defendant thereafter subjected Plaintiff to materially adverse actions, including unwarranted discipline, the imposition of unattainable quotas on pain of discharge, and termination.

188. A causal connection exists between Plaintiff's protected activity and those adverse actions, established by close temporal proximity, by Mr. Cook's express warning that Plaintiff should "watch his back," and by Defendant's pretextual justification.

## COUNT XVII
## WORKERS' COMPENSATION RETALIATION

189. Plaintiff realleges and incorporates by reference paragraphs 1 through 119 above as if fully set forth herein.

190. On May 7, 2025, Plaintiff sustained a compensable on-the-job injury and thereafter pursued a valid claim for workers' compensation benefits, assigned OJCC Case No. 26-001335JPM.

191. Defendant had actual knowledge of Plaintiff's injury and of his claim for workers' compensation benefits.

192. On May 27, 2025 — twenty days later, and while Plaintiff remained under physician-imposed work restrictions — Defendant discharged Plaintiff.

193. Defendant discharged Plaintiff by reason of his valid claim for, and attempt to claim, workers' compensation benefits. The close temporal proximity between the claim and the discharge, together with the pretextual nature of Defendant's stated reason, establishes the requisite causal connection.

194. This claim was expressly preserved in the resolution of Plaintiff's workers' compensation proceeding. No portion of that settlement constituted consideration for its release.

195. Defendant's stated reason for the discharge — failure to meet sales goals — is pretextual for the reasons alleged above, including that Plaintiff sold

approximately $19,000 in May 2025 despite his injury and absences, that he was approximately $20,000 ahead of prior-year departmental sales, and that the quotas invoked were created twenty-two days before the discharge and were objectively unattainable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff YASSER HASSAN respectfully requests that this Court enter judgment against Defendant DILLARD'S, INC. and grant the following relief:

A. Back pay and lost benefits from May 27, 2025 through the date of judgment, with prejudgment interest;

B. Reinstatement to Plaintiff's former position or, in lieu thereof, front pay and lost future earning capacity;

C. Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and injury to professional reputation;

D. Punitive damages;

E. Declaratory relief, including a declaration that Defendant's conduct violated Title VII, 42 U.S.C. § 1981, the ADA, the Florida Civil Rights Act of 1992, and section 440.205, Florida Statutes;

F. Injunctive relief, including an order requiring Defendant to institute policies, practices, and training that eradicate the effects of its unlawful conduct and prevent future violations;

G. Post-judgment interest at the lawful rate;

H. Reasonable attorneys' fees, expert fees, litigation expenses, and costs; and

I. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff YASSER HASSAN demands trial by jury on all issues and all counts so triable as of right.

Dated: September 8, 2026.

Respectfully submitted,

*/s/ Charlotte Fernée Kelly*
**Charlotte Fernée Kelly, Esq.**
Florida Bar No. 0090105
FERNÉE KELLY LAW
14502 N. Dale Mabry Hwy., Suite 200
Tampa, Florida 33618
Telephone: (813) 315-3981
charlotte@ferneekellylaw.com

Attorney for Plaintiff Yasser Hassan